FILED

2007 Nov-09  PM 01:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL MOORE; RONALD P. GENTRY,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 7:07-CV-1153-RDP** |
| | } | |
| **ENOM, INC.; et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendant Internet Corporation For Assigned Names and Numbers ("ICANN") on August 30, 2007. (Doc. # 22).[1]  After submission by both parties of initial briefs on the matter of personal jurisdiction over ICANN (Docs. # 23, 33), and a request by Plaintiffs to conduct discovery on the defenses raised in the motions to dismiss filed by Defendants (Doc. # 29), the court held a telephone conference on September 20, 2007.  The parties agreed during the conference that Plaintiffs would be given the opportunity to file any additional factual or legal support regarding the court's personal jurisdiction over Defendant ICANN before the court took the matter under submission, and ICANN was permitted a reply.  (Docs. # 36, 37, 38, 39, 40, 41).  Additionally, Plaintiffs were permitted to file a Third Amended Complaint on October 8, 2007, which gave them another opportunity to correct and amend their allegations of jurisdiction.  (Doc.

---

[1] By order dated September 20, 2007, the portion of Defendant ICANN's motion seeking dismissal on the basis of Fed. R. Civ. P. 12(b)(6) was denied, without prejudice.  (Doc. # 36).  The court specifically noted that the portion of Defendant ICANN's motion to dismiss that raises a Rule 12(b)(2) personal jurisdiction challenge would remain pending. (Doc. # 36 at 2 n.1).

# 42).  The matter of the court's personal jurisdiction over ICANN is now under submission and properly ripe for decision and, as outlined below, the court finds that because it lacks jurisdiction over ICANN, it is due to be dismissed from this action.

## I.       Standard of Review

As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims because a defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings.  *See Madara v. Hall*, 916 F.2d 1510, 1513-14 & n. 1 (11th Cir. 1990); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d § 1351, at 243-44 (1990).  Thus, as a preliminary matter, this court must determine if it has the power to bind Defendant ICANN with a ruling on the merits of the case.

In order to overcome a Rule 12(b)(2) motion testing the court's exercise of personal jurisdiction over a non-resident defendant where, as here, the issue is to be decided on the briefs and accompanying evidence but without a discretionary evidentiary hearing,[2] a plaintiff must demonstrate a "prima facie case of jurisdiction," *i.e.,* submit evidence sufficient to defeat a motion for judgment notwithstanding the verdict.   *Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange*, 19 F.3d 624, 626 (11th Cir. 1994); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988).  Consonant with that standard of review, the court construes the allegations in the complaint as true if they are uncontroverted by affidavits or deposition testimony. *Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1504 (11th Cir. 1984).

---

[2] The court in its discretion declines to conduct an evidentiary hearing and observes that no party has requested such a hearing.  Fed.R.Civ.P. 12(b)(2); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir.1996).

2

The Eleventh Circuit has explained on more than one occasion that, "[i]f a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Whitney Info. Network, Inc. v. Xcentric Venture, LLC*, 2006 WL 2243041, *3 (11th Cir. 2006) (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)). If the evidence conflicts, the court makes reasonable inferences in favor of the plaintiff, particularly when the jurisdictional questions are seemingly intertwined with the merits of the case. *Delong*, 840 F.2d at 845.

## II.    Relevant Facts

It is undisputed that ICANN, a non-profit corporation with its principal place of business in California, administers the Internet's domain name system on behalf of the Internet community pursuant to a series of agreements with the United States Department of Commerce.  ICANN's duties include designating entities to be domain name registry operators, such as VeriSign, Inc. ("VeriSign"), which operates the ".com" registry.  ICANN also "accredits domain name registrars" to sell domain name subscriptions directly to consumers and to coordinate with the registry operators to effect those registrations.   Defendant eNom, Inc. ("eNom") is a domain name registrar.

Each computer connected to the Internet has an IP address - a unique set of numbers - that identifies it and allows it to "talk" to other computers.  The "Domain Name System" or "DNS" correlates unique letters or words to specific IP addresses for ease of reference.  For example, the DNS allows an Internet user to reach this court's website by typing "alnd.uscourts.gov" instead of the numerical IP address 207.41.17.30.

3

The DNS is organized hierarchically.  The "top level domains" ("TLDs") appear as the suffixes to Internet addresses, and include generic TLDs such as ".com," and ".gov," as well as country-specific TLDs such as ".uk" and ".us."  Below that are "Second-level domain names" such as *google*.com or *uscourts*.gov.  The IP addresses for each TLD, contained in a "root zone file," are maintained on 13 computers called "root servers," including the "A" root server.  Each TLD, in turn, is served by a registry operator that maintains the definitive list of IP addresses for each second-level domain with that TLD.[3]

ICANN coordinates certain aspects of the DNS, which includes entering into agreements with the registry operators for TLDs and also facilitating policy development for the Internet regarding the creation of new TLDs.  Consumers may obtain the right to use second-level domain names through companies known as "registrars."  ICANN operates the accreditation system that has produced a registrar marketplace, with over 800 accredited registrars, including Defendant eNom.  Defendant RegisterFly.com, Inc. was an accredited registrar before ICANN cancelled its accreditation earlier this year.[4]

Plaintiff Michael Moore alleges that he contracted to register 109 Internet domain names with RegisterFly and/or eNom in 2005,[5] while Plaintiff Ronald Gentry alleges that he paid a separate fee for each one of those domain names.  It is undisputed that ICANN did not receive any registration

---

[3] For example, VeriSign operates the ".com" registry; while the ".gov" TLD is operated by the GSA.

[4]  ICANN has terminated RegisterFly's accreditation and filed suit against it for breach of its registrar agreement, which has resulted in a permanent injunction preventing RegisterFly from operating as a registrar.  *See Internet Corp. for Assigned Names & Numbers v. RegisterFly.Com, Inc.*, No. 2:07-cv-02089 (C.D. Cal. filed Mar. 29, 2007).

[5] Plaintiffs claim that although they thought they had registered the domain names with RegisterFly, that company was actually acting as a reseller of domain names for eNom, another ICANN accredited registrar.

4

fees directly from Plaintiffs; however, Plaintiffs allege that ICANN, by way of its contracts with its registrars, indirectly received a fee for each of the domain names that Plaintiffs registered, as would be the case anytime an Alabama citizen registers a domain name with one of its registrars.[6]  It is also undisputed that ICANN is not a party to the contracts between Plaintiffs and RegisterFly or eNom and is not a party to any contract with Plaintiffs regardless of the subject matter.  Plaintiffs claim, however, that they entered into 109 separate agreements for the registration of their domain names that required them to submit to ICANN's Uniform Dispute Resolution Policy, Domain Transfer Agreement, and all of ICANN's current and future policies and specifications.[7]

Plaintiffs claim that RegisterFly and/or eNom placed a number of charges on Gentry's credit card that were unauthorized and fraudulent and that Moore reversed those charges and informed RegisterFly that it was not authorized to place any more charges upon any credit card associated with

---

[6]  In support of this assertion that ICANN receives fees when Alabama citizens register a domain name, Plaintiffs cite to the registrar's contractual obligation to pay fees to VeriSign (Docs. # 37, 39, at Ex. 1 ¶ 5.3), Verisign's obligation under the .com Registry agreement to pay ICANN fees (Docs. # 37, 39, at Ex. 2 ¶ 7.B), and a contractual term setting forth the price that VeriSign may charge "ICANN-accredited registrars" (Docs. # 37, 39, at Ex. 2 ¶ 22.A).  The court notes that none of these contractual provisions discuss fees that may be charged to domain name registrants like Plaintiffs, and certainly do not show that Plaintiffs paid any fee *directly* to ICANN. However, it does not appear that ICANN disputes that they receive fees from VeriSign and other registrars that may *indirectly* result from fees paid by registrants like Plaintiffs.

[7]  ICANN points out that Plaintiffs failed to provide a copy of those agreements to support their assertion, and ICANN demonstrates that the provision to which Plaintiffs refer is actually a clause in the standard accreditation agreement used between ICANN and its registrars which states:

> 3.8 Domain-Name Dispute Resolution. During the Term of this Agreement, Registrar shall have in place a policy and procedures for resolution of disputes concerning Registered Names. Until different policies and procedures are established by ICANN under Section 4, Registrar shall comply with the Uniform Domain Name Dispute Resolution Policy identified on ICANN's website (www.icann.org/general/consensus-policies.htm).

(Doc. # 41, Ex. A ¶ 3.8).

his account.  Plaintiffs claim that despite that request, RegisterFly and/or eNom placed further, unauthorized charges on Plaintiffs' credit cards.  RegisterFly eventually suspended Moore's account and, according to Plaintiffs, "illegally seized the 109 Internet names that Michael Moore had registered and transferred the domain names into an account owned and maintained by eNom." RegisterFly requested nearly $1,300 in past-due payments, and Plaintiffs claim that although they sent RegisterFly the requested funds via certified check, only 80 domain names were reactivated. Plaintiffs allege that they sent e-mails to ICANN personnel regarding the dispute with Registerfly, to which ICANN responded as follows in an email to Plaintiff Moore:

> Dear Mr. Moore,
>
> I have been forwarded several copies of this inquiry that you have sent to numerous people at ICANN and will take this opportunity to respond.  Please understand that ICANN's role is limited.  ICANN is a non-profit corporation that has responsibility for Internet Protocol (IP) address space allocation, protocol identifier assignment, generic (gTLD) and country code (ccTLD) Top-Level Domain name system management, and root server system management functions to preserve the operational stability of the Internet.  ICANN does not have direct responsibility for the actions of resellers, but we do contract with registrars (through which resellers do business).  ICANN's authority with regard to registrars is limited to a contractual relationship governing the registration of domain names, but we do not oversee contractual disputes related to payment of registration fees.
>
> Based on the information you have provided, it does not appear that there has been any violation of ICANN policy that would qualify as a violation of the registrar contract with ICANN.  A copy of this contract can be found at http://www.icann.org/ registrars/ra-agreement-17may01.htm.  Should you review this contract and find that there has been some violation that we have not found, please inform us and we will gladly investigate.
>
> While we are not suggesting that your concerns are unfounded, they just do not fit within our scope of authority.  We have contacted the registrar to pass along your concerns and were informed that this was a financial or contractual matter between you and your reseller.  As such, there is nothing for ICANN to do.  You may wish to contact an attorney for legal advice or the appropriate law enforcement or consumer protection agency if you believe that illegal or inappropriate activity is taking place.

Regards,
Tim Cole
Chief Registrar Liaison
Internet Corporation for Assigned Names and Numbers

## III.   Discussion

The personal jurisdiction analysis is a two-step inquiry. First, this court must determine

whether the exercise of jurisdiction over ICANN is appropriate under the long-arm statute of

Alabama, the forum state. *Sloss Industries Corp. v. Eurisol,* 488 F.3d 922, 925 (11th Cir. 2007); *see*

*also Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).[8]  Second, this court

_____

[8] Although personal jurisdiction over ICANN also could be established under the nationwide service of process provision of RICO, which is one of the bases for relief pled in this case, Plaintiffs are entitled to take advantage of that statute's nationwide service provision *only* if they have stated a colorable RICO claim against ICANN.  *See Republic of Panama v. BCCI Holdings (Luxemborg) S.A.*, 119 F.3d 935, 941-42 (11th Cir. 1997); *Rogers v. Nacchio*, No. 06-13712, 2007 WL 2002594, at *1 n.1 (11th Cir. Jul. 12, 2007).  In other words, if their RICO claims against ICANN are "insubstantial, implausible, or otherwise completely devoid of merit," Plaintiffs may not take advantage of the nationwide service of process provision as a means of establishing personal jurisdiction. *Republic of Panama*, 119 F.3d at 942; *Rogers*, 2007 WL 2002594, at *1 n.1.  Such is the case here.

Count Four of Plaintiffs' Third Amended Complaint attempts to state RICO violations pursuant to both 18 U.S.C. § 1962(c), which provides that it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," and 18 U.S.C. § 1962(d), which makes it unlawful for any person to conspire to violate the RICO statute.  Plaintiffs allege that ICANN, RegisterFly, eNom, and VeriSign "constitute a group . . . associated in fact that Plaintiffs refer to as the ICANN Enterprise." (Doc. # 42, at 25).  Plaintiffs further allege that the ICANN Enterprise has engaged in predicate acts including mail fraud, wire fraud, robbery and extortion and that "Defendants control and operate the ICANN Enterprise [by] engaging in wire fraud; misrepresenting material facts . . . ; unlawfully tying fees for administrative tasks to the regular service fee, by restraining competition and by unlawfully transferring Internet names." (Doc. # 42, at ¶¶ 69-72).  Plaintiffs contend that the ICANN Enterprise engaged in the foregoing predicate acts "to force contractual provisions on the domain name registers, control fees charged to Internet registrars to register, the ability to register names on the Internet, the ability to maintain Internet domain names, and conceal the manner in which it was done." (Doc. # 42, at 25).

The court is persuaded by ICANN's arguments that Plaintiffs' RICO allegations against it are wholly insufficient and completely devoid of merit.  In order to state a violation of § 1962(c), Plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

7

activity." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks and citation omitted). Here, despite multiple opportunities to amend their complaint - even after they were informed of Defendants' concerns regarding the adequacy of their allegations - Plaintiffs have failed to adequately plead at least two of the four requirements to state a colorable RICO violation.

First, in order to adequately state the second requirement of a RICO enterprise, Plaintiffs must allege facts that, if proved, would show "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Williams v. Mohawk Indus.*, 465 F.3d 1277, 1284 (11th Cir. 2006)(quotation marks and citation omitted). The alleged enterprise must have "a structure and goals separate from the predicate acts" themselves, *Ageloff v. Kiley*, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004), and the Defendant must have "some part in directing" the "the operation or management of the enterprise itself." *Williams*, 465 F.3d at 1285 (quotation marks and citation omitted). "[S]imply plugging in names does not establish an enterprise," *Anderson v. Smithfield Foods, Inc.*, 207 F. Supp. 2d 1358, 1363-64 (M.D. Fla. 2002), as Plaintiffs "must plead specific facts, not mere conclusory allegations," *Fla., Office of Att'y Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1305 (S.D. Fla. 2005).

In this case, apart from insufficient bare legal conclusions that the enterprise exists and is "ongoing," Plaintiffs have alleged no facts regarding any organizational structure among the four corporations that could possibly constitute an enterprise. (Doc. # 42, at ¶¶ 69-89.) Plaintiffs simply claim that Defendants have committed misconduct together, which is precisely the sort of allegation that has been held to be insufficient to state a RICO violation. *See, e.g., Aeropower LTD v. Matherly*, No. 1:03-cv-889-WKW, 2007 WL 163082, at *10 (M.D. Ala. Jan. 18, 2007 (holding that a "conclusory allegation that the defendants conspired with each other is insufficient to survive a motion to dismiss as [plaintiffs] alleged no facts to show or to create a reasonable inference that the defendants made an agreement"). Moreover, ICANN argues - and Plaintiffs have not refuted - that the plain language of the statute provides that an "association-in-fact" RICO enterprise may not consist entirely of corporations, as Plaintiff has alleged. Section 1961(4) provides that an enterprise "includes [1] any individual, partnership, corporation, association, or other legal entity, and [2] any union or group of individuals associated in fact although not a legal entity," thus distinguishing that a "group of individuals" - not a group of corporations - is needed for an "association-in-fact" enterprise.

Moreover, Plaintiffs' RICO allegations are deficient with respect to the third "pattern" element of RICO which requires a showing of "continuity" and specific allegations of a series of discrete predicate acts extended over time or likely to do so. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1265 (11th Cir. 2004). Here, Plaintiffs not only failed to allege a discrete or specific set of predicate acts that either formed a closed pattern of racketeering or are likely to extend into the future, but they have not pled each alleged predicate act (mail and wire fraud) with particularity under Rule 9(b). *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997) (noting that plaintiffs are required to plead their RICO claims with the specificity required in Rule 9(b)). Plaintiffs' complaint merely alludes to unspecified "agreements, correspondence and statements" that "contain[ed] false and fraudulent misrepresentations" (Doc. # 42, at ¶¶ 76-83), and improperly "lumps together" all

examines whether exercising jurisdiction over ICANN would violate the Due Process Clause of the

Fourteenth Amendment, which requires both: (1) that the defendant have minimum contacts with

the forum state; and (2) that the exercise of jurisdiction not offend "'traditional notions of fair play

and substantial justice.'" *Sculptchair,* 94 F.3d at 626  (quoting *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945)).  With Alabama as the forum state, the Due Process inquiry pursuant to the

Fourteenth Amendment and the long-arm statute inquiries "merge, because Alabama's long-arm

statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible."

---

Defendants. These allegations are simply not sufficient to state a viable claim under RICO.

Plaintiffs' failure to properly allege a substantive RICO claim against ICANN is also fatal to their derivative RICO conspiracy claim brought pursuant to § 1962(d).  To adequately plead a RICO conspiracy, Plaintiffs must allege "the existence of a conspiracy, and the commission of an overt act in furtherance of the conspiracy that causes injury to the plaintiff."  *Beck v. Prupis*, 162 F.3d 1090, 1098 (11th Cir. 1998).  To constitute an "overt act," conduct must be a substantive RICO violation; therefore, there can be no RICO conspiracy liability without an underlying RICO violation. *Beck*, 162 F.3d at 1098-99; Rogers, 2007 WL 2002594, at *6 ("[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.").  Thus, Plaintiffs' RICO conspiracy claim is likewise devoid of merit and cannot serve as a vehicle for establishing personal jurisdiction over ICANN.

As a final comment on the quality of Plaintiffs' RICO claims, the court notes that ICANN's contention that the claims are irremediably deficient has essentially remained uncontested by Plaintiffs, despite their assertion that they would "amend[] their RICO allegations to withstand Defendants' present motions." (Doc. # 38, at 4). Although the parties submitted an initial round of briefs on the issue of personal jurisdiction, Plaintiffs failed to rely upon the nationwide service of process provision of RICO as a basis for personal jurisdiction until their supplemental brief filed on September 25, 2007. (Doc. # 38, at 4).  And even then, their entire argument that personal jurisdiction lies under the nationwide service of process provision of RICO consists of these two sentences: "To conclude, RICO provides for nationwide service of process in private suits. 18 U. S. C. 1965(d). Plaintiffs are in the process of amending their RICO allegations to withstand Defendants' present motions."  (Doc. # 38, at 4).  Despite that promise that they would cure the RICO claim deficiencies, a review of the Third Amended Complaint reveals no material change to the RICO allegations that would demonstrate a factual or legal basis for those claims. (Doc. # 42).  Thus, because ICANN has shown that Plaintiffs have failed to state a colorable RICO claim against it despite purported amendments to cure the defects associated with those allegations, Plaintiffs cannot rely upon RICO's nationwide service of process provision to establish personal jurisdiction over ICANN.  Accordingly, the court's analysis above will focus on the jurisdiction permitted under Alabama's long-arm statute.

*Eurisol,* 488 F.3d at 925 (citing Ala. R. Civ. P. 4.2(b); *Sieber v. Campbell*, 810 So.2d 641, 644 (Ala.2001)).   Thus, the relevant analysis is to first examine ICANN's contacts with Alabama and next to determine if the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

A.      **Minimum Contacts**

With respect to the minimum contacts analysis, the level and nature of such conduct and connections may support two types of jurisdiction: (1) specific jurisdiction that arises "out of a party's activities in the forum state that are related to the cause of action alleged in the complaint," and (2) general jurisdiction which consists of "continuous and systematic" contacts with the forum that are not necessarily related to the cause of action.   *Eurisol*, 488 F.3d at 925.   As to either form of contacts, the significant question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).   Here, Plaintiffs argue that this court has both general and specific jurisdiction over ICANN.   Although Plaintiffs only need establish one form to satisfy the minimum contacts requirement, for the reasons outlined below the court finds that they have not met their burden in this case to show either.

1.      **Specific Jurisdiction**

According to the Supreme Court, when a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject it to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).   Thus, in order for this court to have specific jurisdiction over ICANN, its contacts with Alabama must satisfy three criteria: (1) they "must be related to the [Plaintiffs']

10

cause of action or have given rise to it;" (2) they must involve "some act by which [ICANN] purposefully avails itself of the privilege of conducting activities within the forum;" and (3) they "must be such that [ICANN] should reasonably anticipate being haled into court there." *Eurisol*, 488 F.3d at 925 (citations omitted).   The minimum contacts analysis is "immune to solution by checklist," *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 499 (5th Cir.1974) (quotation marks omitted), and ICANN's contacts must be viewed "both quantitatively and qualitatively," *Eurisol*, 488 F.3d at 925.

Plaintiffs argue that this court has specific jurisdiction over ICANN because: (1) ICANN responded via email to Plaintiff Moore's email inquiries regarding his dispute with RegisterFly and eNom; (2) when Defendants RegisterFly and eNom contracted with ICANN to become accredited Internet name registrars, ICANN knew that RegisterFly and eNom would be doing business in Alabama and collecting fees from Alabama citizens who registered Internet domain names with them; (3) as a result of the registration of Internet domain names by Alabama citizens, ICANN expected to, and received, benefits when Plaintiffs, who are Alabama citizens, paid fees to RegisterFly and eNom for the registration of 109 Internet names; and (4) Plaintiffs' registered Internet names were directed via IP address to servers located in Jefferson County, Alabama and related to websites accessed by Internet users all over the country.   (Doc. # 33, at 6).   Plaintiffs admit that all of their contracts with RegisterFly and eNom "occurred outside" of Alabama and that ICANN never entered into a direct contract with Plaintiffs.   (Doc. # 33, at 6-7).

Although it is possible that one very significant contact giving rise to the litigation may be sufficient alone to satisfy the minimum contacts requirement, Plaintiffs' attempt in this case to hinge personal jurisdiction on one isolated email that was sent by ICANN "[i]n reply to" e-mails or

registered letters initiated solely by Plaintiff Moore is simply inadequate.[9]   Even assuming, as

Plaintiffs now claim, that the email was "related to" or "gave rise" to their causes of action,

jurisdiction is still lacking because ICANN's singular response to inquiries initiated solely by one

of the Plaintiffs, with whom it has no contractual relationship, does not constitute purposeful

availment of the privilege of conducting activities in the state in which Plaintiffs reside.[10]   *See Sun*

*Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1032-34 (11th Cir. 1991)(finding that a Florida

district court had no personal jurisdiction over a Massachusetts resident after a Florida bank initiated

contact with the resident because he had "entered into no contract or other continuing relationship[]

or obligation[]" with the Florida bank, had not sought out the bank's business, and his contacts with

---

[9] In addition to the one email sent from ICANN to Plaintiff Moore (Docs. # 37, 40 at Ex. 54), Plaintiffs have submitted over a hundred pages of e-mails sent *by Moore* to numerous other parties, including ICANN.  (Docs. # 37, 39, 40, at Exs. 6-51). These e-mails are irrelevant to the court's jurisdictional analysis as Plaintiffs' act of sending e-mail *from* Alabama does not subject ICANN to personal jurisdiction *in* Alabama.

[10] Plaintiffs' attempt to characterize their emails to ICANN, and the single response email from ICANN, as having "participated in ICANN's Uniform Dispute Resolution Policy [UDRP] regarding one of the names that was taken from them and [] ICANN [having] considered the merits of Plaintiffs' complaint and [having] rendered a decision with regard to the complaint," is unavailing. There is simply no support for this bald assertion and the court will not consider it in the jurisdictional equation. Plaintiffs alleged "participation" in the UDRP is nothing more than an e-mail from Plaintiff Moore to *eNom*, copying "icann@icann.org."  (Docs. # 37, 40, at Ex. 53).  The purported merits "decision" by ICANN regarding Plaintiffs' UDRP "claim" is simply an email from an ICANN representative that:  (1) does not mention the UDRP; (2) does not appear to have been written in response to the "participation" email; (3) does not purport to be a judgment or legal decision; and (4) expressly disclaims that ICANN is taking sides in Moore's dispute by stating that "we are not suggesting that your concerns are unfounded, they just do not fit within our scope of authority." (Docs. # 37, 40, at Ex. 54). In any event, that ICANN established a nationwide policy that its registrars agreed to adopt does not subject ICANN to jurisdiction every time a registrar enters into a separate contract with a domain name registrant that refers to that policy.  *See, e.g., Rank v. Hamm*, No. 2:04-0997, 2007 WL 894565, at *12 (S.D. W. Va. Mar. 21, 2007) (holding that "adoption of a nationwide policy does not of itself result in [the policy creator's] purposefully directing personal activities toward West Virginia," where that policy was implemented by third-parties within the State).

the bank "occurred not because [he had] purposefully availed himself of the privilege of conducting activities within Florida," but rather because the bank's customer "told that bank to call [him] in Massachusetts"); *see also L.O.T.I. Group Prods. v. Lund*, 907 F. Supp. 1528, 1534 (S.D. Fla. 1995) (finding no jurisdiction where plaintiff "initiat[ed]" defendant's contacts with forum state).[11]

Alternatively, relying on *World-Wide Volkswagen Corp.,* Plaintiffs argue that the stream of commerce test permits this court to exercise specific jurisdiction over ICANN in this case even though the actions giving rise to the suit took place outside of the forum state and even though ICANN had no direct contact with Plaintiffs. Plaintiffs suggest that ICANN purposefully availed itself of the opportunity to conduct business in Alabama based solely on the fact that ICANN was - or should have been - aware that after it contracted with Defendants eNom and RegisterFly to be registrars, then eNom and RegisterFly, through the stream of commerce, might subsequently contract with Alabama citizens. (Doc. # 33, at 7). This argument cuts no ice at all. As the Late Judge Nelson of this court aptly stated: "Although the concept of foreseeability is not irrelevant . . . , the kind of foreseeability critical to the proper exercise of personal jurisdiction, according to the Supreme Court, is not the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum." *Brown v. Astron Enterprises, Inc.* 989 F.Supp. 1399, 1405 (N.D.Ala. 1997). Thus, even when it is foreseeable to the defendant that the stream of commerce may or will sweep the product into the forum state, that

_____

[11] The court rejects Plaintiffs' farfetched claim that ICANN is subject to personal jurisdiction in Alabama because the 109 Internet domain names that they registered through RegisterFly and eNom "are maintained on computers that are located in Jefferson County, Alabama." (Doc. # 33, at 9). That the domain names Plaintiffs registered with other parties are maintained on servers in Alabama has nothing to do with ICANN's contacts with Alabama. ICANN does not, and is not alleged to, own or operate those servers.

awareness does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state.  *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir.1999) (noting that "awareness that product will enter state is not enough to satisfy due process-not the kind of purposeful activity required").  That ICANN might have been able to predict that its registrars would eventually contract with Alabama citizens is of no import here.

Likewise, any indirect benefit that ICANN receives from the contracts between Plaintiffs and its registrars, to which ICANN is not a party, cannot subject it to personal jurisdiction in Plaintiffs' home state.  "[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State."  *World-Wide Volkswagen*, 444 U.S. at 299.   Indeed, the "'substantial connection' . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State," such as designing the product for the market in the forum State; advertising in the forum State; establishing channels for providing regular advice to customers in the forum State; or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.  *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano,* 480 U.S. 102, 111 (1987); *see also SEC v. Carrillo*, 115 F.3d 1540, 1545 (11th Cir.1997) (noting that it is well established that advertising "reasonably calculated to reach the forum" may be purposeful availment, as can direct solicitation mailings). Here, Plaintiffs have done nothing more than show that ICANN accredits a nationwide army of domain name registrars who then contract with citizens in every state.  Plaintiffs have not shown that ICANN targeted or directed Alabama citizens specifically.   Accordingly, the court finds that

Plaintiffs have not met the requirements of specific jurisdiction based upon ICANN's contacts with Alabama that are related to the claims in this case.

### 2.      General Jurisdiction

Even more tenuous is Plaintiffs' contention that this court has general jurisdiction over ICANN.  General jurisdiction may be exercised when a defendant's contacts with the forum are sufficiently numerous, purposeful, and continuous, as to render fair an assertion of power over the defendant by that state's courts no matter the nature or extent of the relationship to the forum entailed in the particular litigation; if general jurisdiction is established, absolutely no connection need be shown between the state and the claim for the defendant to be summoned constitutionally before that forum's courts.   *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)).  Regardless of the general nature of the contacts in question, however, for purposes of satisfying due process, they must still be purposeful on the part of the defendant; "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Although the Eleventh Circuit has made clear that personal jurisdiction will not be supported because of "random, fortuitous, or attenuated contacts ... or because of the unilateral activity of a third person," *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir.1990)(citations omitted), that is exactly the basis for Plaintiffs' general jurisdiction theory in this case.  Plaintiffs allege that "each time an Alabama citizen registers an Internet domain name; some one visits a website that is maintained by an Alabama citizen; [sic] visits a website that is owned by an Alabama citizen; an Alabama citizen purchases goods or services via the Internet or an Alabama citizen simply surfs the

net, Defendant ICANN has contact with Alabama." (Doc. # 33, at 8-9). It goes without saying that ICANN does not administer the operation of the Internet, much less operate every website on the Internet. Nonetheless, Plaintiffs essentially argue that by virtue of ICANN's administration of the domain name system of behalf of the Internet community, each and every time a resident of a particular state uses, accesses, or even thinks about the Internet, it translates into a jurisdictionally significant contact between ICANN and that resident's home state. If that were sufficient to satisfy the requirements of Due Process, the mere existence of the Internet - which indirectly connects every person with access to it - would reduce the concept of personal jurisdiction to a game of "Six Degrees of Kevin Bacon."

Moreover, that Alabama citizens can view ICANN's website and email questions to ICANN is not dispositive because general jurisdiction does not arise simply because a party maintains website or otherwise offers information nationwide. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (holding that a company's maintenance of a nationwide toll-free telephone number and website were insufficient to establish personal jurisdiction); *Matthews v. Brookstone Stores, Inc.*, 469 F. Supp. 2d 1056, 1064 (S.D. Ala. 2007) (same). ICANN's website, which is operated from web servers physically located in Southern California, does not offer anything for sale or otherwise allow those who access it to enter into an agreement with ICANN through the Internet. (Brent Declaration, at ¶ 8). *See, e.g.*, *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (holding that, "even repeated contacts" with Texas residents through a web site did not qualify as "continuous and systematic," as a web site may be "doing business *with* Texas . . . not doing business *in* Texas") (emphasis in original); *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (noting that "the fact that [an ICANN-accredited registrar] maintains a website that is accessible to anyone over the Internet

16

is insufficient to justify general jurisdiction," and finding it "significant that . . . registrants initiate the contact with" defendant); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (holding that "maint[enance of] an Internet website accessible by anyone capable of using the Internet, including people living in California . . . . fall[s] well short of the 'continuous and systematic' contacts" needed for general jurisdiction); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) ("We are not prepared at this time to recognize that a State may obtain general jurisdiction over out-of-state persons who regularly and systematically transmit electronic signals into the State via the Internet based solely on those transmissions. Something more would have to be demonstrated.").  Nor can general jurisdiction be premised on a "stream of commerce" theory, *i.e.*, that a defendant has contacts with third parties who then do business in the forum state.  *See, e.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 778 (7th Cir. 2003); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000); *Matthews*, 469 F. Supp. 2d at 1065.  Therefore, ICANN's contracts with domain name registrars who presumably do business with purchasers in virtually every state are not sufficient to establish general jurisdiction in Alabama because ICANN itself has no *direct* contacts with Alabama.

Courts analyzing general jurisdiction have included the following as factors that weigh against the exercise of non-specific jurisdiction over a non-resident defendant: (1) a lack of business or a business license in the forum, *Helicopteros*, 466 U.S. at 416; (2) a lack of property ownership in the forum, *Butler v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1266 (N.D. Ala. 2000)(Hancock, J.); and (3) a lack of any "bank accounts, telephone listings, or mailing addresses in" the forum, *Exter Shipping, Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1312 (N.D. Ga. 2004).  Here, Plaintiffs have not offered any competent evidence to controvert ICANN's averment that it has no employees, assets,

bank accounts, real property, personal property, offices, or other facilities in Alabama.  (Brent Declaration, at ¶ 5.)  ICANN is not licensed to do business in Alabama, does not have a registered agent for service of process in Alabama, and has no phone numbers or mailing addresses here. (Brent Declaration, at ¶ 5.)  ICANN has no agreements with registries or registrars that reside in Alabama nor does ICANN collect fees directly from domain name registrants such as Plaintiffs. (Brent Declaration, at ¶¶ 4, 6, 7.)   Based upon these facts, the court cannot conclude that ICANN has "systematic and continous" contacts with Alabama such that it is subject to the jurisdiction of Alabama courts for any claim brought against it here.

> ### B.      Fair Play and Substantial Justice

Having determined that ICANN lacks the minimum contacts necessary to support personal jurisdiction, the court also finds that considerations of "fair play and substantial justice" cannot support personal jurisdiction over ICANN in this action. *International Shoe Co.,* 326 U.S. at 316. This inquiry requires the court to examine the nature of ICANN's contacts with the forum in light of additional factors, including the burden on ICANN of litigating in Alabama, Alabama's interest in adjudicating and overseeing the dispute, Plaintiffs' interest in obtaining convenient and effective relief, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 476-77 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).  "This is essentially a reasonableness inquiry."  *Sloss*, 488 F.3d at 933.  These additional factors may be used to bolster a conclusion that the exercise of personal jurisdiction is actually proper when fewer than the otherwise sufficient number of minimum contacts are present.  *Burger King*, 471 U.S. at 477.  That is simply not the case here, however.

18

The court concludes that hauling a non-profit organization - with no employees or facilities in Alabama, no license to do business in Alabama, no agreements with registries or registrars that reside in Alabama, nor any other significant contact with Alabama (save one reply e-mail to Plaintiff who initiated the contact) - into an Alabama court would offend traditional notions of fair play and substantial justice. While it is true that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a [distant] State," the difficulties of geography still impose a not insubstantial burden on a defendant - and particularly a nonprofit organization - seeking to mount an effective defense against a potentially substantial claim in a remote jurisdiction to which that party has no real ties. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957).  This and the other considerations outlined above lead the court to conclude that the principles of fairness and substantial justice do not favor an assertion of personal jurisdiction over ICANN by this court.

**IV.     Conclusion**

Plaintiffs' failure to establish that this court has personal jursdiction over ICANN is fatal to their claims against it as this court has no power to bind ICANN with a ruling on the merits of those claims.   Accordingly, a separate order dismissing ICANN from this case will be entered.

**DONE** and **ORDERED** this _____9th_____ day of November, 2007.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

19